### THE LIMON.

### NANTASKET BEACH STEAMBOAT CO. v. UNITED FRUIT S. S. CORPORATION.

Circuit Court of Appeals, First Circuit.
November 5, 1929.

No. 2362.

Albert T. Gould, of Boston, Mass. (Blodgett, Jones, Burnham & Bingham, of Boston, Mass., on the brief), for appellant.

Raymond S. Wilkins, of Boston, Mass. (Storey, Thorndike, Palmer & Dodge, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge. This admiralty appeal grows out of a collision in a dense fog about 2:40 p. m. (standard time) in President Roads, in Boston Harbor, on July 20, 1927, between the Limon, belonging to the United Fruit Steamship Corporation, and the Mayflower, belonging to the libelant, Nantasket Beach Steamboat Company. Only the Mayflower was substantially injured.

The court below dismissed the libel, holding the Limon free from fault. The present issue is whether both vessels were at fault.

About 1:25 in the afternoon, when the Limon, destined for Havana, started down the harbor, the evidence as to the weather conditions is conflicting. But when the Limon was about abreast the Army Base Pier, she ran into heavy fog, and shortly thereafter —certainly when she reached Castle Rock Buoy—the pilot and her master agreed that it was unsafe to proceed farther. Instead of anchoring at the prescribed anchorage ground between Castle and Spectacle Islands, immediately available on her right, she proceeded down the harbor, over a mile, endeavoring to cross the channel, to reach the anchorage grounds at quarantine. There she anchored, at least 1,200 feet away from the quarantine grounds, and directly in the line of incoming vessels.

The Mayflower, a paddle wheel boat, left Pemberton at 2:11 (standard time), and shortly thereafter encountered a thick fog. She reduced her speed, and sounded her fog whistles at proper intervals; but, as there was a flood tide, half speed gave her a speed of 8 to 9 knots over the ground. This is properly conceded by libelant's counsel to be an immoderate speed under the conditions. About 8½ minutes after the Mayflower passed Nix Mate Gas Buoy, about 2:32, her lookout reported a vessel dead ahead, which proved to be the Limon; prompt reversal of the Mayflower's engines failed seasonably to check her speed; she collided with the Limon, and was substantially damaged thereby.

We think that the decision below, that the Limon was without fault, must be reversed. Under the Federal Act of March 3, 1899, c. 425, § 15, 30 Stat. 1152, USCA title 33, c. 9, § 409, and under the Harbor Master's Rules, G. L. Mass., chap. 102, she was anchored where she had no right to be. She was not forced to this anchorage by any sudden and unavoidable emergency. The Georgia (D. C.) 208 F. 635, 645. She deliberately passed by Castle Island anchorage grounds, undertook to cross the channel to the quarantine grounds, and failed to reach that anchorage by at least 1,200 feet. She was directly in the path of incoming vessels, in a narrow channel. Article 25 of the Inland Rules (33 USCA § 210); The Yarmouth (D. C.) 100 F. 667, 668; The Vera (D. C.) 224 F. 998, affirmed (C. C. A.) 226 F. 369. Under such circumstances, the burden was on her of proving that her illegal position could not have been a contributing cause of the collision. She fails to sustain this burden.

We are unable to concur in the view of the court below, that "the Limon used good seamanship in trying to get on to that anchorage ground, which she did not get on." When her pilot and master agreed that it was unsafe to proceed further, she was easily accessible to the Castle Island grounds, in which there is no evidence that there were then other vessels. On all the evidence, it was her plain duty to seek anchorage in those grounds, assuming, as we do assume for present purposes, that she was justified in leaving her wharf and in not anchoring further up the harbor at the Bird Island anchorage.

The decision below must be reversed, and the damages divided.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the appellant recovers costs of appeal.